# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GARY G. GOODGAME,

        Plaintiff,

vs.                                                    No. CIV 98-1412 JC/LFG

THE CITY OF HOBBS,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant's Motion for Partial Summary Judgment *(Doc. 10)*, filed April 5, 1999. The Court has reviewed the motion, the memoranda submitted by the parties, and the relevant authorities. The Court finds that Defendant's motion is well taken in part and will be granted in part.

**I.    Factual Background**

The City of Hobbs Police Department employed Plaintiff as a police officer from June 10, 1996 through December 23, 1997. Plaintiff injured his back in October 1996 and was placed on "light duty" and workers' compensation disability leave. In October and November 1997, Plaintiff's condition was evaluated. The physician determined that Plaintiff had a 5% permanent impairment, but could return to work with some physical restrictions.

On December 22, 1997, Captain Smith of the Hobbs Police Department informed Plaintiff that he was being terminated. The Hobbs City Manager accepted the Police

Department's recommendation that Plaintiff be terminated, and Plaintiff was terminated effective December 23, 1997.

Plaintiff filed this lawsuit on November 17, 1998 seeking damages under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165. Plaintiff also brings state law claims for wrongful discharge and retaliatory discharge.

## II. Standard for Summary Judgment

Defendant moves for summary judgment on Plaintiff's ADA claims (Count I) and retaliatory discharge claims (Count III). Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). I must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *See Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

## III. ADA Claim

Plaintiff brings his discrimination claim under Title II of the ADA, which applies to public entities and public services. *See* 42 U.S.C. § 12131. By contrast, Title I of the ADA applies to employment-related discrimination against the disabled by any employer except the United States, federally owned corporations, Indian tribes, and tax-exempt private membership clubs. *See* 42 U.S.C. § 12111. It is well established that a plaintiff must exhaust administrative remedies (i.e., file a charge with the EEOC and receive a right-to-sue letter) before bringing suit under Title I. *See Dao v.*

*Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996); *Davoll v. Webb*, 943 F. Supp. 1289, 1296 (D. Colo. 1996). It is equally well established that actions brought under Title II of the ADA do not require exhaustion of administrative remedies. *See Davoll*, 943 F. Supp. at 1297. Because Plaintiff fails to allege that he filed an EEOC complaint, Plaintiff must bring his claims only under Title II, if at all.

Defendant argues that Plaintiff cannot state a claim under Title II for two independent reasons. First, Defendant claims that Title II does not apply to employment discrimination. Second, Defendant claims that Plaintiff is not a "qualified individual with a disability" as that term is defined in 42 U.S.C. § 12131(2) because he was capable of returning to work as a police officer without significant restrictions of any major life activity. Plaintiff responds to the first argument by pointing out that a majority of the federal courts that have considered the question have determined that Title II does apply to employment discrimination. On the second issue, Plaintiff presents evidence that he has a 5% permanent impairment that limits his ability to lift, and that as a result of his lack of physical conditioning during the period of disability, Plaintiff would need to avoid direct encounters with suspects until his physical conditioning improved. *See* Ex. A. to Def.'s Resp. *(Doc. 12)*.

### A. Whether Title II of the ADA Encompasses Employment Discrimination Claims

"The vast majority of courts which have considered this question" have concluded that Title II covers employment discrimination. *Downs v. Massachusetts Bay Transp. Auth.*, 13 F. Supp. 2d 130, 135. However, only two circuit courts of appeal have confronted this issue directly, and those courts have divided on the issue. *See Zimmerman v. State of Oregon Dep't of Justice*, 170 F.3d 1169

(9th Cir. 1999) (holding Title II does not apply to employment); *Bledsoe v. Palm Beach County Soil & Water Conservation Dist.*, 133 F.3d 816 (11th Cir. 1998).

In *Zimmerman*, a Ninth Circuit panel held that Title II of the ADA did not apply to employment because it was the "unambiguously expressed intent of Congress" that employment claims be excluded from Title II. *Zimmerman*, 170 F.3d at 1184. In reaching its conclusion that Title II was unambiguous, the *Zimmerman* court acknowledged that:

1) it was creating a circuit split on the issue, *see id.* at 1183;

2) "most courts have held that Title II applies to employment," *id.*;

3) the Attorney General has determined that Title II applies to employment, *id.* at 1172-73, and has promulgated regulations dealing with employment, 28 C.F.R. § 35.140(a);

4) Congress expressly modeled Title II on the Rehabilitation Act, 29 U.S.C. §§ 701-796*l*, which clearly encompasses employment discrimination.

The *Zimmerman* court based its holding on three grounds. First, the *Zimmerman* court meticulously examined the grammar of 42 U.S.C. § 12132 and concluded that the clause "or be subjected to discrimination by any such entity" referred back to the language in the prior clause involving "the services, programs, or activities" of a public entity. Thus, according to the court, 42 U.S.C. § 12132 "prohibits discrimination only in a public entity's 'outputs.'" *See Zimmerman*, 170 F.3d at 1176. The court concluded that because employment is not an output (i.e., a service, program or activity) of a public entity, employment must not be covered. *See id.*

Next, the court looked to the structure of the ADA. Noting that Congress included several employment-specific provisions in Title I, the court concluded that Congress must have intentionally omitted direct reference to employment in Title II. *See id.* at 1177. The court also noted that if

Title II covered employment claims, then Title I becomes superfluous as applied to public employees. *See id.* In addition, the court noted that public employers could be subject to inconsistent regulations if Title II applied to employment claims because Congress delegated to the EEOC the responsibility for interpreting Title I while delegating to the Attorney General the power to interpret Title II. *See id.* at 1178.

For its third line of analysis, the *Zimmerman* court looked to the similarities between the Rehabilitation Act and Title II. *See id.* at 1179. The court noted that only one section of the Rehabilitation Act was expressly incorporated into Title II. According to the court, that section (29 U.S.C. § 794a) only includes procedural rights, not substantive rights. The *Zimmerman* court concluded that Congress' failure to expressly incorporate all of the Rehabilitation Act into Title II is further evidence that Congress did not intend for Title II to apply to public employment discrimination. *See id.* at 1179-80.

Although I commend the Ninth Circuit panel for the depth of its semantic analysis and the remarkable ease with which it uses sophisticated tools of statutory construction to discern "unambiguously" the intent of Congress, I find the Eleventh Circuit's analysis in *Bledsoe* to be more persuasive. *Bledsoe v. Palm Beach County Soil & Water Conservation Dist.*, 133 F.3d 816 (11th Cir. 1998). The *Bledsoe* court looked first at the legislative history of Title II and noted that the Report of the House Judiciary Committee clearly states, on two occasions, that Title II covered employment discrimination. *See id.* at 821 (citing H.R. Rep. No. 101-485(II) at 84; H.R. Rep. No. 101-485(III) at 50). Next, the court noted that the statutory language clearly indicated that Congress intended for Title II to proscribe the same forms of discrimination that Section 504 of the Rehabilitation Act covered. *Id.* at 821-22. Because Section 504 of the Rehabilitation Act clearly

covers employment discrimination, *see Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 626-32 (1984), the nearly-identical language of Title II must also include employment discrimination. *See Bledsoe*, 133 F.3d at 821-22.

Although the *Bledsoe* court concluded that "employment coverage is clear from the language and structure of Title II," the court noted that two other factors would compel it to hold that Title II applied to employment even if it determined that the language of the statute was ambiguous. First, the Department of Justice regulations interpreting Title II specifically proscribe employment discrimination. *See* 28 C.F.R. § 35.140. Because Congress directed the Attorney General to issue regulations specifically implementing Title II, *see* 42 U.S.C. § 12134(a), the Department of Justice interpretation is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984). Second, the *Bledsoe* court noted that because so many other federal courts have implicitly or explicitly recognized Title II employment cases, it would be "swimming against the current" of precedent to hold otherwise. *See Bledsoe*, 133 F.3d at 825.

My analysis of the issue is straightforward. The structure of the ADA clearly shows that Congress intended to extend protections to the disabled analogous to those conferred by Title VII of the Civil Rights Act of 1964 by enacting Title I of the ADA. Similarly, Congress intended to expand the protections of the Rehabilitation Act by enacting Title II of the ADA. The substantive part of the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(20) [sic] of this title, shall, solely by reason of her or his disability, **be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity** receiving Federal financial assistance or under any program or activity conducted by any executive agency or by the United States Postal Service.

29 U.S.C. § 794 (emphasis added). By comparison, the substantive part of Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, **be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity**.

42 U.S.C. § 12132 (emphasis added). Although the Ninth Circuit focuses on the subtle differences in the language of these two statutes to conclude that Congress must have intended that the Rehabilitation Act would apply to employment while Title II of the ADA would not, I cannot agree. The only substantive difference involves the entities covered by the two statutes: the Rehabilitation Act applies to federal or federally-funded programs and activities, while Title II of the ADA applies to public entities as defined in 42 U.S.C. § 12131(1). The other changes (such as removing the words "otherwise" and "solely," adding the term "services," and simplifying the sentence structure) can only expand the reach of the protections offered to the disabled rather than restrict them.

I disagree with the Ninth Circuit panel's conclusion that Congress intended to incorporate only the procedural rights of the Rehabilitation Act in Title II. The legislative history cited by the Eleventh Circuit, and ignored by the Ninth Circuit, provides compelling evidence that Congress intended to incorporate in Title II the substantive employment rights of the Rehabilitation Act. *See Bledsoe*, 133 F.3d at 821. For example, the House Judiciary Committee report clearly states that "[i]n the area of employment, title II incorporates the duty set forth in the regulations for Sections 501, 503 and 504 of the Rehabilitation Act to provide a 'reasonable accommodation' that does not constitute an 'undue hardship.'" H.R. Rep. No. 101-485(III) 50 (1990). The legislative history also indicates that Congress intended that Title I and Title II cover the same forms of

discrimination. *See* H.R. Rep. No. 101-485(II) 84 (1990) ("The Committee intends, however, that the forms of discrimination prohibited by [42 U.S.C. § 12132] be identical to those set out in the applicable provisions of titles I and III . . .")

I recognize the Ninth Circuit's concern that inconsistent regulations may result if both Title I and Title II cover employment. I also recognize that Congress has made the administrative procedures of Title I unnecessary for public employees by enacting Title II. But it is the responsibility of Congress to correct these deficiencies. Unless Congress directs otherwise, I must conclude that Title II of the ADA prohibits the same employment-related discrimination that the Rehabilitation Act covers.

### B. Whether Plaintiff is a qualified individual with a disability

Plaintiff presents evidence that he has a 5% permanent disability and that his ability to lift is impaired. Plaintiff also presents evidence that he was on disability leave for an extended period of time just prior to his termination and that he required physical conditioning to get back into the physical shape required by his job. I conclude that Plaintiff has presented sufficient evidence to withstand summary judgment on this issue. A reasonable jury could conclude that Plaintiff was substantially limited in one or more major life activities. *See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174 (10th Cir. 1996). Plaintiff also presents evidence that he could meet one of the other tests under 42 U.S.C. § 12102(2), i.e., that he had a record of such an impairment or was regarded by his employer as having an impairment.

## IV. State Retaliatory Discharge Claims

Defendant claims that the New Mexico Tort Claims Act has not waived governmental immunity for Plaintiff's retaliatory discharge action. *See* N.M. Stat. Ann. § 41-4-4. Because the City of Hobbs is a governmental entity, Plaintiff must identify a waiver of immunity within the Tort Claims Act that applies to his retaliatory discharge cause of action.[1]

Plaintiff identifies N.M. Stat. Ann. § 41-4-12 as a waiver that applies in this case. That statute provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

Defendant claims that the waiver of immunity does not apply because Plaintiff was discharged by the City Manager, who was not a law enforcement officer. Defendant also claims that the waiver does not apply because retaliatory discharge is not one of the enumerated torts listed in N.M. Stat. Ann. § 41-4-12.

The fact that Plaintiff was discharged by the City Manager does not make the waiver of sovereign immunity inapplicable. Acts committed by third parties are covered by the Section 41-4-12 waiver when a law enforcement officer "causes" the tort to take place. *See Weinstein v. City of*

---

[1] Count II of Plaintiff's complaint, alleging breach of contract, is not at issue at this time. The written contract exception to governmental immunity contained in N.M. Stat. Ann § 37-1-24 may apply to that cause of action. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N.M. 728, 734, 918 P.2d 7, 13 (1996); *Spray v. City of Albuquerque*, 94 N.M. 199, 202, 608 P.2d 511, 514 (1990).

*Santa Fe*, 121 N.M. 646, 652, 916 P.2d 1313, 1319 (1996). There is no doubt that the City Manager terminated Plaintiff based on the recommendations of law enforcement officers.

However, I agree with Defendant's second contention, that retaliatory discharge is not one of the enumerated torts covered by the Section 41-4-12 waiver. Plaintiff acknowledges that retaliatory discharge is not explicitly included in the language of the waiver, but argues that the waiver applies because violations of statutory duties fall within the waiver. *See Weinstein*, 121 N.M. at 656, 916 P.2d at 1323. According to Plaintiff, the Workers' Compensation Act imposes a duty not to discriminate on Defendant. *See* N.M. Stat. Ann. § 52-1-28.2.

Although the language of the *Weinstein* decision is quite broad in terms of the types of torts that might fall within the "statutory right" exception, Plaintiff cannot stretch that exception to apply in this case. I note that the public policy tort of retaliatory discharge is a common law cause of action in New Mexico and is separate and distinct from the statutory cause of action for retaliation in the Worker's Compensation Act. *See Michaels v. Anglo Am. Auto Auctions, Inc.* 117 N.M. 91, 93-94, 869 P.2d 279, 281-82 (1994). The Worker's Compensation Act provides a cause of action for vindicating the statutory right, with remedies of reinstatement and a civil fine. *See* N.M. Stat. Ann. § 52-1-28.2(B)-(D). Plaintiff is not raising that statutory cause of action in this suit, but is seeking damages under the much broader common law public policy tort.

I conclude that it would be improper to "bootstrap" a waiver of immunity for the public policy tort of retaliatory discharge from the language of the Worker's Compensation Act. In *Weinstein*, an individual had no private remedy to enforce the statutory duty of law enforcement officers to investigate and assist in the prosecution of the criminal laws of the state. *See Weinstein*, 121 N.M. at 655, 916 P.2d at 1322 (finding fines and removal from office to be the only statutory penalties).

Unlike the statutory duties cited by *Weinstein*, the Worker's Compensation Act provides a remedy (reinstatement to previous position) to an individual for violation of the statutory right. Plaintiff is not seeking to avail himself of the statutory remedy for vindication of his statutory rights. Instead, Plaintiff is seeking a common law cause of action to vindicate a common law employment right. Therefore, I conclude that retaliatory discharge does not fall within the waiver of governmental immunity provided by N.M. Stat. Ann. § 41-4-12.

### V.     Conclusion

Wherefore,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment, filed April 5, 1999 *(Doc. 10)*, is **granted in part**. Count III of Plaintiff's Complaint is dismissed. Counts I and II of Plaintiff's complaint remain.

DATED this 27th day of May, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:         Kathryn D. Lucero
                                Foster•Johnson•Harris•McDonald
                                Albuquerque, New Mexico

Counsel for Defendant:     Gregory L. Biehler
                                Beall & Biehler, P.A.
                                Albuquerque, New Mexico