# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GARY G. GOODGAME,

    Plaintiff,

    vs.                                                                                                                                                                     No. CIV 98-1412 JC/LFG

CITY OF HOBBS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant's Motion for Summary Judgment ("Motion"), filed November 2, 1999 *(Doc. 26)*. The Court has reviewed the Motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendant's Motion is not well taken and will be denied.

## I.     Factual Background

The City of Hobbs Police Department employed Gary Goodgame as a police officer from June 10, 1996 through December 23, 1997. Mr. Goodgame injured his back during a training exercise in October 1996. In August 1997, Dr. Richard Castillo wrote that Mr. Goodgame was able to return to work with some restrictions. *See* Exhibit 17 attached to Plaintiff's Brief in Opposition to Defendant's Motion, filed November 2, 1999 *(Doc. 27)*. Mr. Goodgame was placed on "light duty" from October 29, 1996 to February 10, 1997. Following termination of his "light duty" assignment, Mr. Goodgame received worker's compensation disability payments. Mr. Goodgame never returned to work.

In October 1997 Hobbs Orthopedic and Sports Therapy ("H.O.S.T.") performed a Functional Capacities Evaluation ("FCE") that found Mr. Goodgame's lifting ability "would allow him to return to work as a Police Officer" and further recommended a program of conditioning exercises that "[m]ost likely . . . would [en]able [Mr. Goodgame] to demonstrate greater than a 50 lbs. floor to knuckle lift." Ex. D to Def.'s Mot. In August and November 1997, Dr. Castillo determined that Mr. Goodgame had reached "maximum medical improvement," and had a 5% permanent impairment. *See* Exs. B, E to Def.'s Mot. After reviewing the FCE, Dr. Castillo concluded that Mr. Goodgame's "duties that would put him in a direct encounter with individuals is [sic] contraindicated with the patient's physical conditioning." Ex. E to Def.'s Mot.

Mr. Goodgame states that prior to December 1997 he contacted Police Chief Tony Knott to inquire about positions "where I would have a chance to go, and . . . hopefully stay with the department. I didn't want to leave." Dep. of Goodgame at 20, Ex. 5 to Pl.'s Br. in Opp'n. On December 15, 1997, Captain Smith of the Hobbs Police Department stated in a memorandum to Chief Knott that Mr. Goodgame's "physical condition does not allow him to meet the requirements of a police officer." Ex. K to Def.'s Mot. The Hobbs City Manager accepted the Police Department's recommendation that Mr. Goodgame be terminated. On December 22, 1997, Captain Smith informed Mr. Goodgame that he was being terminated, effective December 23, 1997.

Plaintiff Goodgame filed this lawsuit on November 17, 1998 seeking damages under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165. Plaintiff also brings a state law claim for wrongful discharge.[1]

---

[1] This Court dismissed Plaintiff's retaliatory discharge claim in a Memorandum Opinion and Order filed May 27, 1999.

## II. Standard for Summary Judgment

Defendant moves for summary judgment on Plaintiff's ADA claim and wrongful discharge claim. Summary judgment should be granted if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *See Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

## III. ADA Claim

Title II of the ADA provides that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. A *prima facie* ADA discrimination claim requires the plaintiff to establish three elements: 1) Plaintiff is disabled within the meaning of the ADA; 2) Plaintiff is qualified; that is, with or without reasonable accommodation, he is able to perform the essential functions of his job; and, 3) the employer terminated him because of his disability. *See White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995). Defendant contends that Plaintiff is not "qualified" as required by the second element of a *prima facie* claim.

An individual is "qualified" if he is able to perform the essential functions of his job. *See Aldrich v. Boeing Co.*, 146 F.3d 1265, 1271 (10th Cir. 1998). If an individual is unable to perform

the essential functions of his job, he is "qualified" if a reasonable accommodation would have enabled him to perform those functions. *See id.* In this case, the parties do not dispute that two essential functions of a certified police officer are the ability to effect an arrest and the ability to lift fifty pounds.

Based primarily on Plaintiff's prior statements, Defendant contends that Plaintiff could not perform the essential functions of a police officer. For example, Plaintiff testified that at the time of his termination he believed that he was unable "to actually fight somebody or run after somebody without the risk of possibly more injury." Dep. of Goodgame at 15-16, Ex. G to Def.'s Mot. However, while a prior statement "may constitute evidence relevant to a determination of whether the plaintiff is a qualified individual . . . it is not dispositive." *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir. 1998) (quoting *Rascon v. U S West Communications*, 143 F.3d 1324, 1332 (10th Cir. 1998)). In *Aldrich*, the court refused to dismiss an employee's ADA claim despite the fact that he had previously testified to an inability to perform his job with or without accommodation. The court emphasized the importance of determining the case on the "facts as they might be established ultimately," and pointed out that "[t]he Federal Rules of Evidence well provide the means with which to confront plaintiff with such inconsistency." *Id.* at 1268-69 (internal quotations omitted). Thus, Plaintiff Goodgame's prior comments regarding his ability to perform his job duties are not dispositive on this issue.

In response to Defendant's argument, Plaintiff points to the H.O.S.T. FCE as creating a factual dispute on the issue of whether he was able to perform the essential functions of his position. H.O.S.T. determined that "[i]n terms of lifting" Plaintiff could "return to work as a Police Officer."

Ex. D to Def.'s Mot.[2] While Defendant correctly points out that the recommendations fail to specify that Plaintiff was capable of restraining suspects, a lack of comment about a particular duty does not necessarily indicate an inability to perform that duty. Although Dr. Castillo warned against "duties that would put [Plaintiff] in a direct encounter with individuals," nowhere does he define a "direct encounter," or provide any reason for his concern, other than a general reference to "the patient's physical conditioning." Ex. E to Def.'s Mot. One purpose of the H.O.S.T. FCE is to determine whether an employee is capable of performing his job.[3] Given this purpose, and the H.O.S.T. recommendation that Plaintiff could return to work, a rational fact-finder could find Dr. Castillo's letter insufficient evidence from which to conclude that Plaintiff was unable to perform the essential functions of his job. Summary judgment is precluded on Plaintiff's ADA claim because a genuine dispute exists over the material issue of whether Plaintiff could perform the essential functions of his job.

## IV.    Wrongful Discharge Claim

The general rule in New Mexico is that "an employment contract is for an indefinite period and is terminable at the will of either party unless there is a contract stating otherwise." *Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N.M. 728, 731, 918 P.2d 7, 10 (1996) (citing *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993)). One exception to the at-will rule is where an implied contract restricts an employer's power to discharge. *See id.*

---

[2] The H.O.S.T. recommendations are based on a series of physical assessments including range of motion and strength testing.

[3] H.O.S.T. conducts a "work step program for essential elements of . . . police officers' positions," Dep. of Ware at 9, Ex. H to Def.'s Mot., and evaluates FCE results to determine "the potential and feasibility for returning the client to their [sic] work." Ex. D to Def.'s Mot.

at 731, 918 P.2d at 10. Employee handbooks and personnel manuals may constitute an implied employment contract if they "control[] the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures they outline." *Id.* at 732, 918 P.2d at 11 (quoting *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989)). "The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation . . . relied upon." *Garrity v. Overland Sheepskin Co.*, 121 N.M. 710, 713, 917 P.2d 1382, 1385 (1996).

As a preliminary matter, I will address Plaintiff's attempt to claim that Defendant breached an implied contract to discharge employees only for cause. Plaintiff contends that "the [Hobbs personnel] manual *implies* that unless the employee's performance is inadequate, he or she will not be discharged." Pl.'s Opp'n at 21 (emphasis added). However, absent a definite, specific, or explicit representation to the contrary, no contract exists that modifies Defendant's power to terminate Plaintiff without cause. *See Garrity*, 121 N.M. at 713, 917 P.2d at 1385. Plaintiff points to no such representation in the Personnel Manual. Therefore, to the extent that Plaintiff brings a wrongful discharge claim alleging that Defendant breached an implied contract to discharge only for cause, that claim will be dismissed.

However, Plaintiff also argues that Defendant breached an implied contract to follow certain termination procedures described in the Hobbs Personnel Manual ("Manual"). Specifically, the manual provides that when a probationary employee is terminated "[t]he reasons for dismissal shall be furnished to the employee both verbally and in writing . . . ." Manual at 9-4, Ex. 22 to Pl.'s Opp'n.

Plaintiff denies receiving the "reasons for dismissal" to which a probationary employee is entitled, and further argues that he was no longer a probationary employee at the time of his termination.[4]

Defendant does not dispute that the manual controls the employer-employee relationship. Rather, Defendant essentially argues that: 1) Plaintiff was informed of the reasons for his dismissal, and 2) Plaintiff was a probationary employee at the time of his termination according to the manual. Assuming for the purposes of this opinion that Plaintiff was a probationary employee, I find that a factual question remains on the issue of whether Plaintiff received the reasons for his dismissal as required by the Personnel Manual.

In a memorandum terminating Plaintiff's employment, Hobbs' city manager informed Plaintiff that "a probationary employee may be discharged . . . if it is determined that you are not suited for the duties of your position." Ex. L to Def.'s Mot. Although that memorandum apparently informed Plaintiff that he was being terminated because of "unsuitability," it is not clear whether "unsuitability" constitutes the "reasons for dismissal" required by the manual. On one hand, a rational fact-finder could conclude that "unsuitability" is so vague a term that it is tantamount to providing no reason at all. On the other hand, an equally rational fact-finder could find that "unsuitability" suffices as a "reason for dismissal" and thus satisfies Defendant's obligations to a probationary employee. Viewing the evidence in the light most favorable to Plaintiff, a rational jury could conclude that Defendant's termination memorandum failed to provide Plaintiff with the reasons for his dismissal as required by the manual. Because a genuine issue of material fact is in dispute regarding whether

---

[4] The Manual provides eligible regular employees with "the opportunity to participate in a Pre-termination hearing" prior to discharge. Manual at 9-4, Ex. 22 to Pl.'s Opp'n.

Defendant provided Plaintiff with "reasons for dismissal," summary judgment is precluded on Plaintiff's wrongful discharge claim.

**V.     Conclusion**

I find that a genuine issue of material fact exists regarding whether Plaintiff could perform the essential functions of his job. Therefore, Defendant's Motion for Summary Judgment on the ADA claim will be denied. There also remains a question of fact about whether Plaintiff received the "reasons for dismissal" as required by the Hobbs Personnel Manual. Therefore, Defendant's Motion for Summary Judgment on the Wrongful Discharge claim based on breach of implied contract to follow certain termination procedures will be denied.

Wherefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment on Plaintiff's ADA claim is hereby **denied**.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment on Plaintiff's wrongful discharge claim based on breach of implied contract to follow certain termination procedures is hereby **denied**.

DATED this 21st day of January, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:      J. Douglas Foster
                            Kathryn D. Lucero
                            Foster•Johnson•McDonald•Lucero•Koinis
                            Albuquerque, New Mexico

Counsel for Defendant:      Gregory L. Biehler
                            Beall & Biehler, P. A.
                            Albuquerque, New Mexico