**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GARY G. GOODGAME,

    Plaintiff,

    vs.                                                                                                                                                                               No. CIV 98-1412 JC/LFG

CITY OF HOBBS,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    THIS MATTER came on for consideration of Defendant's Renewed Motion for Judgment, New Trial or Remittitur ("Renewed Motion"), filed March 15, 2000 *(Doc. 54)*, and Plaintiff's Rule 59 Motion to Alter or Amend the Judgment ("Rule 59 Motion"), filed March 20, 2000 *(Doc. 56)*. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendant's Renewed Motion is not well taken and will be denied. The Court finds that Plaintiff's Rule 59 Motion is well taken in part and will be granted in part.

    **Background**

    Plaintiff Gary Goodgame was terminated from the Hobbs police department on December 23, 1997. Subsequently, Plaintiff filed this lawsuit alleging that Defendant City of Hobbs breached an implied contract with Plaintiff when it failed to follow certain procedures during his termination. This matter was tried before a jury on February 28, 2000 through February 29, 2000. On March 1, 2000, the jury rendered its verdict in favor of Plaintiff and awarded damages in the amount of $156,333. On March 7, 2000, judgment was entered in accordance with the jury verdict in favor of Plaintiff.

**Standard**

Defendant argues that it is entitled to a judgment as a matter of law ("JAMOL"), or alternatively, a new trial or remittitur.  "Judgment as a matter of law is appropriate 'only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'"  *Townsend v. Daniel*, 196 F.3d 1140, 1144 (10th Cir. 1999) (quoting *Vining v. Enterprise Fin. Group, Inc.*, 148 F.3d 1206, 1213 (10th Cir. 1998)).  A motion for JAMOL "should be cautiously and sparingly granted."  *Deters v. Equifax Credit Info. Servs.*, 981 F. Supp. 1381, 1384 (D. Kan. 1997) (quotation omitted).  When a trial court considers a motion for JAMOL, it "may not make credibility determinations or weigh the evidence [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2110 (2000) (citations and quotations omitted).  Moreover, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe . . . . [Thus], the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."  *Id.* (internal quotations and citations omitted).

"Motions for a new trial are committed to the sound discretion of the trial court."  *Deters*, 981 F. Supp. at 1385 (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)).  "They are 'not regarded with favor and should only be granted with great caution.'"  *Id.* (quoting *United States v. Kelly*, 929 F.2d 582, 586 (10th Cir. 1991)).  In order to succeed on its motion for a new trial, Defendant "carries the heavy burden of demonstrating that the verdict was

clearly, decidedly, or overwhelmingly against the weight of the evidence." *Hynes v. Energy West, Inc.*, 211 F.3d 1193, 1206 (10th Cir. 2000) (citation and quotations omitted).

A district court's disposition of a motion for remittitur or new trial on damages is reviewed for a manifest abuse of discretion. *See id.* (citing *Vining*, 148 F.3d at 1216). "[A]bsent an award so excessive . . . as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Id.* (citation and quotations omitted).

### Discussion

#### I. Defendant's Renewed Motion for Judgment, New Trial or Remittitur

##### A. *Whether the Evidence Supports Plaintiff's Breach of Implied Contract Claim*

At trial, Plaintiff argued that Defendant breached an implied contract with Plaintiff to follow certain procedures before terminating him. Plaintiff based his claim primarily on certain provisions of Defendant's personnel manual which state that a probationary employee shall be furnished with the reasons for his dismissal and a regular employee shall receive a pre-termination hearing. *See* Personnel Manual § 908.1, 909.1, Pl.'s Trial Ex. 10. Defendant asserts that there is insufficient evidence to support a jury finding that Plaintiff was a regular employee at the time of his discharge, and thus entitled to a pre-termination hearing. I find that sufficient evidence was presented at trial to allow the jury to reasonably conclude that Plaintiff was no longer a probationary employee at the time of his termination.

The parties presented conflicting evidence regarding the calculation of a probationary year for police officers. Defendant argued that Plaintiff only worked four months as a police officer, and

four additional months on light duty, thus falling short of the required year. Plaintiff presented evidence that he was employed for more than a calendar year, and argued that the personnel manual does not describe how to calculate a probationary year for police officers. Plaintiff further pointed out that he received pay for accrued leave, even though the personnel manual states that employees terminated during probation "are not eligible for payment of annual leave or sick leave." Personnel Manual § 419, Pl.'s Trial Ex. 10. Therefore, assuming all evidence and drawing all inferences in favor of Plaintiff, the jury could reasonably find that Plaintiff was no longer a probationary employee at the time of his discharge, and thus, entitled to a pre-termination hearing as described in the personnel manual.[1]

        B.    *Whether the Breach of Implied Contract Resulted in Damages to Plaintiff*

Defendant asserts that Plaintiff was physically unable to perform the duties of a police officer at the time of his termination. Thus, Defendant contends that a breach of contract could not be the cause of Plaintiff's damages, because even if Plaintiff had received a pre-termination hearing, nothing could have changed Plaintiff's physical condition or allowed him to work as a police officer. Plaintiff contends that his physical condition "merely precluded him from lifting more than 50 pounds" and that he was capable of working as a station officer in a restricted duty capacity. Pl.'s Br. in Opp'n to Def.'s Renewed Motion at 6, filed Mar. 21, 2000 *(Doc. 59)*. Additionally, Plaintiff presented evidence that he had previously performed the duties of a station officer in a light duty capacity and that he was eligible for an additional period of light duty. *See* Policy Statement, Pl.'s Trial Ex. 9.

---

[1] Because I find that sufficient evidence supports a jury conclusion that Plaintiff was no longer a probationary employee, I need not discuss whether Defendant failed to provide Plaintiff with the procedure required when dismissing a probationary employee.

From this evidence, the jury could reasonably infer that Plaintiff was entitled to an additional period of light duty assignment in some capacity prior to termination.

In addition to Plaintiff's physical condition, Defendant cited Plaintiff's refusal to accept other positions as justification for his termination. Police Chief Knott testified that he offered to create a dispatcher position for Plaintiff in an attempt to maintain Plaintiff's employment. Chief Knott testified that as a dispatcher, Plaintiff could maintain his police certification for three years and rejoin the police force if his physical condition improved. Plaintiff, on the other hand, testified that Chief Knott did not explain the dispatcher position to him in these terms and believed that to take the position would mean the loss of his police certification. Plaintiff testified that Chief Knott "never offered for me to come out of dispatch," and believed that to work as a dispatcher would mean that his "days as a police officer were gone." Trial Tr. of Feb. 28, 2000. Moreover, Plaintiff provides evidence that he was unaware that Chief Knott was presenting him with a choice between the dispatcher job and termination.[2] Given Chief Knott's testimony, the jury was entitled to conclude that Plaintiff erroneously believed that for him to take a dispatcher position would mean the end of his career as a police officer. In light of this evidence, and given Chief Knott's intent to maintain Plaintiff's employment, the jury could also reasonably conclude that a pre-termination hearing would address Plaintiff's misconceptions and ultimately result in Plaintiff's assignment to a dispatcher position.[3]

---

[2] Defendant asserts that Plaintiff was terminated "due to his medical condition and refusal to take any position other than that of certified police officer." Def.'s Reply in Supp. of Renewed Motion at 2, filed Apr. 4, 2000 *(Doc. 61)*. However, Plaintiff was advised in his termination letter only that he was "not suited for the duties of . . . [his] position." Pl.'s Trial Ex. 11.

[3] The pre-termination hearing is intended to provide the employee an "opportunity to present rebuttal to the recommended action." Personnel Manual § 1102, Pl.'s Trial Ex. 10.

The evidence and inferences favorable to Plaintiff support a jury finding that a pre-termination hearing would have resulted in Plaintiff's continued employment in a light duty capacity, or as a dispatcher, or some combination of these two positions. Thus, the jury could determine that when Defendant denied Plaintiff a pre-termination hearing, it effectively denied Plaintiff an opportunity to continue his employment. The evidence presented on this issue does not point only in favor of Defendant, nor is the jury's verdict clearly, decidedly or overwhelmingly against the weight of the evidence. Consequently, Defendant's motion for judgment as a matter of law and motion for a new trial will be denied.

        C.     *Whether the Damage Award is Excessive*

Defendant next argues that even if damages were available to Plaintiff, the jury award of $156,333 is excessive. In evaluating the damage award, the Court is mindful that generally, the determination of damages is exclusively the function of the jury. *See Hynes v. Energy West, Inc.*, 211 F.3d 1193, 1206 (10th Cir. 2000) (citation omitted) ("[T]he jury's determination of the fact [of damages] is considered inviolate."); *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 7, 791 P.2d 452, 458 (1990) (citation omitted). I also note that mitigation is an affirmative defense, and the burden is on Defendant to minimize the damages. *See McGinnis*, 110 N.M. at 7, 791 P.2d at 458.

Defendant points to evidence that Plaintiff declined an offer for a position as a dispatcher "and other positions for which he qualified." Def.'s Mem. in Supp. of J. as a Matter of Law, New Trial or Remittitur at 7, filed Mar. 15, 2000 *(Doc. 55)*. Defendant also contends that Plaintiff was unable to work full time until after June of 1998. Defendant apparently argues that the jury failed to consider this evidence in calculating Plaintiff's damages. Here, the dispatcher position was offered to Plaintiff before he was discharged, and Defendant does not present evidence that Plaintiff was offered any

-6-

position with Defendant following his termination. Thus, the jury could reasonably infer that these pre-termination offers were no longer available after Plaintiff was dismissed. Plaintiff also presented evidence that, even with his injury, he was capable of working full time in some position.[4] Thus, the jury could reasonably conclude that Defendant failed to meet its burden of minimizing Plaintiff's damages. Finally, I note that a certain portion of the award may represent emotional distress damages. Because the verdict form does not indicate separate damage amounts, it is impossible to determine precisely how the jury apportioned the damages among lost wages, employment benefits and emotional distress. For these reasons, and in light of the deference the Court must accord the jury's determination of damages, Defendant's arguments fail to demonstrate that the jury verdict in this case is excessive. Accordingly, Defendant's motion for remittitur will be denied.

## II.     Plaintiff's Rule 59 Motion to Alter or Amend the Judgment

Plaintiff requests the Court to amend the judgment to provide Plaintiff with pre-judgment interest at 15% on all or part of the judgment pursuant to NMSA 1978 § 56-8-3, pre-judgment interest at 10% on the entire amount of the judgment pursuant to NMSA 1978 § 56-8-4(B), and post-judgment interest on the entire amount of the judgment pursuant to 28 U.S.C. § 1961. The Court finds that Plaintiff's Rule 59 Motion is well taken in part and will be granted in part.

First, I find that Plaintiff's request for pre-judgment interest under NMSA § 56-8-3 rests within the discretion of this Court. Here, the jury's damage award does not represent a readily ascertainable amount pursuant to a contractual formula. *See Kueffer v. Kueffer*, 110 N.M. 10, 12, 791 P.2d 461, 463 (1990). Nor is it clear what portion of the award represents wages, benefits, or

---

[4] Plaintiff presented evidence that he could perform certain office duties; a physician testified that Plaintiff was capable of working with a fifty pound weight-lifting restriction.

emotional distress damages. Given these circumstances, the Court declines to exercise its discretion to award pre-judgment interest pursuant to NMSA § 56-8-3, thus Plaintiff's request under this statute will be denied. Second, Plaintiff concedes in his reply to Defendant's response, that an award of pre-judgment interest under NMSA § 56-8-4(B) is precluded by NMSA § 56-8-4(D). Thus, Plaintiff's request for pre-judgment interest under this statute will also be denied. Finally, Defendant fails to dispute the appropriateness of Plaintiff's request for post-judgment interest pursuant to 28 U.S.C. § 1961. Consequently, in accordance with 28 U.S.C. § 1961, post-judgment interest will be granted at the rate of 6.197%, on the entire amount of the judgment, to be calculated from the date of entry of judgment.

### Conclusion

The Court finds that the evidence in this case sufficiently supports the jury finding that Defendant breached an implied contract to provide Plaintiff with a pre-termination hearing, and that this breach resulted in damages. Further, Defendant fails to demonstrate that the amount of the jury award is excessive. Therefore, Defendant's Renewed Motion for Judgment, New Trial or Remittitur will be denied. Plaintiff's request for post-judgment interest will be granted and interest will be awarded at 6.197% on the entire judgment, to be calculated from the date of entry of judgment. Plaintiff's requests for pre-judgment interest will be denied.

Wherefore,

IT IS ORDERED that Defendant's Renewed Motion for Judgment, New Trial or Remittitur *(Doc. 54)* is **denied**.

IT IS FURTHER ORDERED that Plaintiff's Rule 59 Motion to Alter or Amend the Judgment *(Doc. 56)* is **granted in part**. Post-judgment interest is granted in accordance with

28 U.S.C. § 1961, at 6.197% on the entire amount of the judgment, to be calculated from the date of the entry of judgment. Plaintiff's requests for pre-judgment interest pursuant to NMSA 1978 § 56-8-4(B) and/or NMSA 1978 § 56-8-3 are denied.

DATED this 4th day of August, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

    J. Douglas Foster
    Kathryn D. Lucero
    Foster•Johnson•McDonald•Lucero•Koinis
    Albuquerque, New Mexico

Counsel for Defendant:

    Gregory L. Biehler
    Beall & Biehler, P. A.
    Albuquerque, New Mexico